14 F.3d 864
 UNITED STATES of America
v.
PREMISES KNOWN AS RR # 1, BOX 224, DALTON, SCOTT TOWNSHIP
AND NORTH ABINGTON TOWNSHIP, LACKAWANNA COUNTY,
PA, with all Appurtenances and
Improvements Thereon,
Christopher Winslow, Appellant.
 No. 93-7265.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 4, 1993.
Decided Jan. 19, 1994.
 
 Frank J. Muraca (argued), Dunmore, PA, for appellant.
 Wayne P. Samuelson, U.S. Atty., Barbara K. Whitaker (argued), Asst. U.S. Atty., Scranton, PA, for appellee.
 Before HUTCHINSON, COWEN and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 
 1
 Appellant, Christopher Winslow ("Winslow") appeals an order of the United States District Court for the Middle District of Pennsylvania granting summary judgment in favor of the appellee, United States of America (the "Government"), in an in rem civil forfeiture action pursuant to 21 U.S.C.A. Sec. 881(a)(7) (West Supp.1993) against property owned by Winslow. In granting summary judgment to the Government, the district court held that no triable issue of fact remained as to whether the defendant property was used to facilitate the distribution of cocaine and that the forfeiture of the property was not an excessive fine prohibited by the Eighth Amendment to the Constitution. We hold the affidavit Winslow filed admitting he possessed drugs for personal use on the property but denying use of the property to distribute them creates a triable issue of fact in this civil forfeiture action following the inability of the jury that convicted Winslow of possession with intent to distribute to agree on forfeiture. Therefore, we will remand the case for determination of whether the property is subject to forfeiture and, if necessary, whether its forfeiture would be an excessive fine within the meaning of the Eighth Amendment's prohibition as the United States Supreme Court has interpreted that prohibition in its recent decisions in Alexander v. United States, --- U.S. ----, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993), and Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).
 
 
 2
 The Government brought this civil forfeiture proceeding against certain real property owned by Winslow, known as R.R. # 1, Box 224, Dalton, Scott Township and North Abington Township, Lackawanna County, Pennsylvania ("defendant property"), under 21 U.S.C.A. Sec. 881(a)(7), in conjunction with criminal charges against Winslow and a criminal forfeiture charge against the property. A jury found Winslow guilty on the criminal count, but it could not agree on criminal forfeiture and the district court granted a mistrial on the forfeiture issue. Thereafter, the Government filed a motion for summary judgment in its civil forfeiture action. Winslow opposed the motion for summary judgment, contending that there was a triable issue of fact on the existence of a nexus between the property that is the subject of the in rem civil forfeiture action and the criminal act the property is claimed to have facilitated. Winslow also contended that forfeiture of the property would subject him to an excessive fine in violation of the Eighth Amendment.
 
 
 3
 The district court held that the Government had produced evidence showing a nexus or connection between Winslow's property and his criminal acts of drug distribution and that Winslow's affidavit did not leave any triable issue on the use of the property. It also held the Eighth Amendment's prohibition on excessive fines did not apply to civil forfeiture actions. Accordingly, it granted the Government's motion for summary judgment.
 
 
 4
 Two questions are present in this case. The first is whether Winslow's affidavit challenging the Government's allegations raises a genuine issue of material fact that remains in dispute. If so, Winslow is entitled to a jury trial on civil forfeiture. The second question is the effect of the Supreme Court's recent decisions holding that the Eighth Amendment's prohibition against excessive fines applies to civil and criminal forfeiture actions. On the first question, we conclude that a triable issue of fact does exist. We will therefore reverse the district court's order granting the Government's motion for summary judgment and remand for further proceedings consistent with this opinion and, if necessary, a decision on the Eighth Amendment question of excessiveness.
 
 I. Factual & Procedural History
 
 5
 Winslow purchased the defendant property on February 1, 1983, for $86,100.00. Its value at the time the property was seized is estimated to be $120,420.00. On February 11, 1992, a grand jury returned an indictment against Winslow, charging him with cocaine distribution in violation of 21 U.S.C.A. Sec. 841 (West 1981).[1] The indictment also alleged the property was involved in the crime and so asked for its criminal forfeiture, pursuant to 21 U.S.C.A. Sec. 853(a)(2) (West Supp.1993).[2] On March 20, 1992, the Government filed a concomitant in rem civil forfeiture action against the defendant property, apparently to preserve its rights against the property if, as it turned out, it was not found subject to criminal forfeiture. On April 9, 1992, the United States Marshal seized the defendant property pursuant to an in rem warrant issued by the district court.
 
 
 6
 A jury convicted Winslow of the distribution offense on August 12, 1992. The court had submitted the issue of criminal forfeiture to the jury with a question on a special verdict slip. The jury initially returned a finding on the special verdict slip that the property is forfeited. But when polled, a number of jurors said they did not favor forfeiture because they felt the forfeiture law was too severe. The court then declared a mistrial on the forfeiture issue.
 
 
 7
 On August 26, 1992, the Government filed a motion for summary judgment in the civil forfeiture case, and on September 11, 1992, Winslow filed a cross-motion for summary judgment. In its motion for summary judgment, the Government relied on evidence produced at the criminal trial as well as an affidavit from an agent of the Federal Bureau of Investigation.
 
 
 8
 Both the evidence and the affidavit indicated that Winslow used a telephone located on the defendant property to arrange drug transactions. They also indicated that Winslow stored cocaine and scales and made "distributions" of cocaine on the defendant property. This evidence of cocaine distribution from the defendant property was supported by testimony from several individuals who had testified in the criminal case that they had purchased cocaine from Winslow at his residence. From this testimony it could be inferred that Ronald Whitiak ("Whitiak"), during 1987, often arranged to meet Winslow at the defendant property to purchase cocaine. On these visits, Whitiak indicated that he would pay Winslow for the cocaine with a check drawn on his family business payable to Winslow Investments, a non-existent entity. Whitiak testified he was sometimes accompanied by his wife, Rose Whitiak, while at other times either Frank Foote ("Foote") or Nikki Mancus ("Mancus") accompanied him. All three corroborated some of Whitiak's testimony. Whitiak also identified forty checks he had written for amounts ranging from $195.00 to $3,025.00 as payment for cocaine. Many of them were endorsed by Winslow. Other evidence submitted at the criminal trial indicated each cocaine transaction involved a minimum of an eighth of an ounce of cocaine.
 
 
 9
 In November of 1991, the Federal Bureau of Investigation interviewed Winslow. During that conversation, Winslow said that he had received drugs from a courier from Florida and admitted using cocaine. He also conceded that he had sold cocaine but stated that he did not recall to whom he had sold it.
 
 
 10
 With an affidavit of his own, Winslow disputed the Government's evidence showing that he distributed cocaine on the defendant property.[3] In it, he said that any cocaine hidden on the defendant property was for his personal use and not for distribution. Moreover, he also stated that the only time he distributed any cocaine occurred when he traded some to a restaurant manager in exchange for champagne. He swears that this exchange occurred at the restaurant and not on the defendant property. He denies ownership of the scale found on the property stating that it belonged to a Government witness who had repeatedly asked Winslow's father to return it.
 
 
 11
 Winslow argues that his criminal conviction does not contradict his affidavit because the conviction establishes only the general proposition that he distributed cocaine at some time or times within the period set out in the indictment in an unspecified amount at an unspecified place. He goes on to contend that the evidence presented in the criminal trial cannot be given preclusive effect on the use of property the criminal jury refused to forfeit. He concludes that the trial testimony is merely evidence of the property's use to facilitate the distribution of cocaine, evidence which his own affidavit directly disputes. Finally, Winslow swears that he purchased the defendant property with funds inherited from his grandparents and gifts from his mother, not with criminal profits, thus disputing a potential alternate basis for forfeiture based on the purchase of the property with funds derived from dealings in drugs.[4] As we have already said, Winslow expressly acknowledges that he used cocaine and stored it on the defendant property during the time in question.
 
 
 12
 On April 8, 1993, the district court granted the Government's motion for summary judgment and directed civil forfeiture of the defendant property. In doing so, the district court concluded that the Government's evidence established the necessary nexus between the defendant property and the alleged cocaine distribution and that there were no remaining issues of material fact. Winslow then filed a timely notice of appeal.
 
 II. Jurisdiction & Standard of Review
 
 13
 The district court had jurisdiction over this civil forfeiture action under 28 U.S.C.A. Sec. 1345 (West 1976) (conferring jurisdiction to district courts over actions where United States is a plaintiff) and 28 U.S.C.A. Sec. 1355 (West Supp.1993) (conferring jurisdiction over forfeiture actions). Because the district court's order granting summary judgment to the Government is a final order, we have appellate jurisdiction under 28 U.S.C.A. Sec. 1291 (West 1993).
 
 
 14
 District courts' orders granting summary judgment are subject to plenary review. Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 76 (3d Cir.1990), cert. denied, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). In that review, we look at the evidence in the same light the district court should have, giving the non-moving party, Winslow, the benefit of every favorable inference that can be drawn from the record to determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Bank of Nova Scotia v. Equitable Fin. Management, Inc., 882 F.2d 81, 83 (3d Cir.1989).
 
 III. Analysis
 
 15
 A. The Evidence Concerning the Nexus Requirement
 
 
 16
 The Government seeks forfeiture of the defendant property under 21 U.S.C.A. Sec. 881(a)(7) (West Supp.1993). It provides:
 
 
 17
 The following shall be subject to forfeiture to the United States and no property right shall exist in them
 
 
 18
 . . . . .
 
 
 19
 (7) All real property ... in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter....
 
 
 20
 21 U.S.C.A. Sec. 881(a)(7) (emphasis added). This Court has held that inquiry into whether property is subject to forfeiture centers around the word "facilitate." United States v. RD 1, Box 1, 952 F.2d 53, 57 (3d Cir.1991) (citing United States v. One 1977 Lincoln Mark V Coupe, 643 F.2d 154, 157 (3d Cir.), cert. denied, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981)). Specifically, we have stated that the Government must show sufficient facts to provide a reasonable ground for belief that the defendant property made the commission of the alleged crime "less difficult and allowed it to remain more or less free from obstruction or hindrance." Id. (internal quotations and citations omitted).
 
 
 21
 The Government bears the initial burden of proof in attaching property for trial in civil forfeiture cases and to do so it must establish some connection between the alleged criminal activity and the defendant property the Government seeks to forfeit.[5]
 
 
 22
 Its burden at this initial stage, however, is satisfied if it establishes probable cause that the property is connected to criminal activity based upon information " 'adequate and sufficiently reliable to warrant the belief by a reasonable person that' the property was used to further the trafficking of illegal narcotics." United States v. 6109 Grubb Rd., 886 F.2d 618, 621 (3d Cir.1989) (quoting United States v. One 56-Foot Motor Yacht Named the Tahuna, 702 F.2d 1276, 1282 (9th Cir.1983)). Once the Government has provided sufficient evidence to show probable cause, the burden shifts to the defendant-owner to rebut the property's connection to his criminal activity by a preponderance of the evidence. See 19 U.S.C.A. Sec. 1615 (West Supp.1993) (setting forth burden of proof in forfeiture proceedings); RD 1, Box 1, 952 F.2d at 56.
 
 
 23
 In United States v. 200 Pennsylvania Avenue, 786 F.Supp. 400 (D.Del.1992), the district court granted the Government's motion for summary judgment on forfeiture based on the defendant property owner's guilty plea and an undercover officer's affidavit. The court indicated that the guilty plea standing alone was insufficient to support probable cause. Id. at 406. It concluded, however, that the unrebutted affidavit of the undercover agent stating that the officer had purchased a controlled substance on the defendant property, combined with the sentencing order, showed probable cause. Moreover, the court concluded that the defendant-owner's failure to point to any evidence that could meet his burden of proving the property was not significantly connected with his criminal activity entitled the Government to summary judgment. Id.
 
 
 24
 Here, as in 200 Pennsylvania Avenue, the Government has clearly met its initial burden of demonstrating probable cause. Though Winslow's criminal conviction cannot, in and of itself, meet the Government's burden of establishing probable cause that the defendant property was used to facilitate Winslow's distribution of drugs, the Government has submitted affidavits and evidence produced at trial sufficient, if believed, to support its claim. As in 200 Pennsylvania Avenue, the Government's evidence at Winslow's criminal trial and in its affidavits shows that the defendant property was connected to and facilitated Winslow's cocaine distribution. This could subject the property to forfeiture unless Winslow is able to point to evidence that could persuade a rational fact finder that the property was not used to facilitate the distribution of cocaine. Unlike 200 Pennsylvania Avenue, however, Winslow has submitted a sworn denial of the facts set out in the Government's affidavits. Thus, we must consider whether Winslow's affidavit rebuts the Government's evidence and permits a rational fact finder to determine, by a preponderance of the evidence, that Winslow did not use his residence to facilitate the distribution of cocaine.
 
 
 25
 Winslow says that the district court should not have granted summary judgment to the Government because serious and material credibility issues exist. Stating that the establishment of the requisite nexus under Sec. 881(a)(7) is a question of fact, Winslow argues that the presence or absence of that fact depends upon the credibility of the testimony of the government agents in their affidavits and the various government witnesses as opposed to the testimony he sets out in his own affidavit. He asserts that the issue of credibility created by the conflicting affidavits presents a genuine issue of material fact which requires a trial.
 
 
 26
 Winslow also contends that his criminal conviction for cocaine distribution does not establish that the defendant property was used to facilitate his cocaine distribution. The crux of this argument is that Winslow was not necessarily convicted for distribution of cocaine on the defendant property. Rather, Winslow contends that the criminal jury could have convicted him for the trading of cocaine for champagne at a restaurant, as he relates. In support of his position, Winslow also points to the criminal jury's question to the court during its deliberations at his criminal trial in which it asked whether sharing or trading cocaine constituted distribution of cocaine under the law as well as the jury's inability to agree on forfeiture of the defendant property.
 
 
 27
 The Government, on the other hand, argues that it submitted sufficient proof to the district court to justify a grant of summary judgment of forfeiture against the defendant property because of its nexus with Winslow's criminal activity. Essentially, the Government repeats the district court's findings that the evidence at the criminal trial demonstrates Winslow used a telephone on the defendant property to arrange drug transactions, stored cocaine and scales on the defendant property, and that the defendant property was, itself, the site of unlawful distributions. The Government argues any one of these events, standing alone, would establish the connection Sec. 881(a)(7) requires unless Winslow's evidence could rationally be found to refute it.
 
 
 28
 The Government cites various cases in which the nexus of facilitation that permits civil forfeiture was established by conduct similar to that which the Government's evidence points to in the case at hand. See, e.g., United States v. 38 Whalers Cove Drive, 954 F.2d 29, 32-33 (2d Cir.) (finding use of home as site of two sales of cocaine valued at $250.00 sufficient to support nexus), cert. denied, --- U.S. ----, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992); United States v. 916 Douglas Ave., 903 F.2d 490, 494 (7th Cir.1990) (finding use of home telephone for negotiations and arrangement of drug sale sufficient to support nexus required under Sec. 881(a)(7)), cert. denied, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991). The Government fails, however, to address Winslow's argument that his own affidavit raises credibility issues which pose genuine questions of material fact foreclosing summary judgment.
 
 
 29
 In considering this argument, a brief reprise of the standards governing summary judgment is in order. A party moving for summary judgment must show that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). A genuine issue of fact is present when a reasonable trier of fact, viewing all of the evidence, could rationally find in favor of the nonmoving party in light of the burden of proof placed on the nonmover. United States v. 717 South Woodward St., 2 F.3d 529, 533 (3d Cir.1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-56, 106 S.Ct. 2505, 2512-14, 91 L.Ed.2d 202 (1986)). The nonmoving party may not merely deny the allegations in the mover's pleadings; instead, the party must assert " 'specific facts showing that there is a genuine issue for trial.' " Id. (quoting Fed.R.Civ.P. 56(e)). Otherwise, summary judgment is compelled.
 
 
 30
 Recently, in 717 South Woodward Street, this Court considered a case involving a credibility question somewhat similar to the one now before us. There, the Government sought forfeiture of three parcels of real estate. It asserted that one Jaime Rivera ("Rivera") had used the property to facilitate his cocaine distribution. Id. at 532. Rivera was convicted of the criminal charges, and the Government, relying on much of the evidence used to prosecute Rivera, filed a civil forfeiture action under 21 U.S.C.A. Sec. 881(a)(7). Id. at 531.
 
 
 31
 Rivera's wife and another man, Luis Rivera, filed claims to the property asserting that they did not know of Rivera's drug dealings on the property. Id. at 531-32. Unlike the case at hand, however, Rivera's wife and Luis Rivera, the third man, did not contest the fact that Jaime Rivera, the criminal defendant, had used the property to facilitate his drug transactions. Instead, in their sworn pleadings and answers to interrogatories, they invoked the "innocent owner" defense provided by Sec. 881(a)(7). Id. at 532. Specifically, Rivera's wife asserted that she had no knowledge of her husband's drug dealing, that there was no evidence suggesting that she did, and that she operated the food market (one of the properties to be forfeited) and used the earnings from it to maintain their residence (another property to be forfeited). Id.
 
 
 32
 The district court granted the Government's summary judgment motion holding that Rivera's wife's " 'bare denial coupled with whatever tenuous inferences can be drawn from her allegations' " failed to rebut the Government's evidence as a matter of law. Id. (quoting United States v. 717 South Woodard St., 804 F.Supp. 716, 724 (E.D.Pa.1992)). We reversed. We held that Rivera's wife's assertions were enough to raise a question of material fact which precluded the district court's grant of summary judgment. We stated that "[a]n affidavit of the claimant denying knowledge is competent evidence tending to show [an absence of knowledge] and in the absence of other evidence rendering it incredible, such an affidavit creates a genuine issue of material fact." Id. at 534. We concluded that "unless the court, based on all of the evidence, can say with confidence that a rational trier of fact could not credit the claimant's denial, summary judgment cannot properly be granted." Id.
 
 
 33
 Similarly, the court in United States v. $175,918.00 in United States Currency, 755 F.Supp. 630, 634 (S.D.N.Y.1991), held that a claimant's sworn claims, in which he asserted that a portion of the property the Government sought to forfeit was acquired from a legitimate source, were sufficient to raise a question of fact and precluded summary judgment. In $175,918.00 in United States Currency, the Government had instituted a civil forfeiture action under 21 U.S.C.A. Sec. 881(a)(6), seeking forfeiture of monies in the amount of $175,918.00. It alleged this money was the product of narcotics trafficking, stating that the currency was either proceeds traceable to a narcotics transaction, used to facilitate such a transaction, or both, and thus, was forfeitable under 21 U.S.C.A. Sec. 881(a)(6). Id. at 632.
 
 
 34
 The Government's civil forfeiture action followed the guilty pleas of two defendants to state narcotics charges. Id. at 631. One of the defendants, Monterrey, opposed the Government's civil forfeiture action, claiming that only some of the funds ($100,000.00) were traceable drug proceeds but the remaining $75,918.00 came from legitimate sources and was thus not forfeitable. Id. at 632. In support, Monterrey gave an affidavit in which he swore that the money he claimed was untainted and represented his life savings and funds received from the sale of a business. Id. at 634. In the affidavit Monterrey also swore that he had lived rent-free for an extended period of time, and that he did not keep his savings in a bank. Id. The district court held that the Government had met its initial burden of demonstrating probable cause for the forfeiture but also concluded that the statements in Monterrey's affidavit raised a question of fact which, if believed, would meet his ultimate burden of rebutting the Government's demonstration of probable cause. Id. On this reasoning, the court denied summary judgment stating that "Monterrey's defense raises credibility issues as to a material issue of fact, which cannot be resolved on a motion for summary judgment." Id.
 
 
 35
 On analogy to our decision in 717 South Woodward Street and the court's reasoning in $175,918.00 in United States Currency, we hold that Winslow's affidavit raises a genuine issue of material fact that precludes summary judgment. Winslow's criminal conviction is neither res judicata nor does it collaterally estop Winslow on the question whether he used the defendant property to facilitate his crime of distribution. In reaching its decision to convict Winslow, the jury did not necessarily decide where the illegal cocaine distribution occurred. See 200 Pennsylvania Ave., 786 F.Supp. at 405 n. 7 ("[T]he location of the drug sale was not a critical and necessary part of the judgment and the issue was not necessarily decided by the [trial] court."). There is, therefore, an issue of fact dependent on the credibility of witnesses as to whether Winslow used his property to facilitate his cocaine distribution. Cf. Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 148 (3d Cir.1993) ("Summary judgment is inappropriate when a case will turn on credibility determinations....") (citation omitted).
 
 
 36
 If a jury were to believe Winslow and find that he merely stored cocaine for his own personal use on the defendant property, such conduct would not connect the property to a violation of the statute prohibiting the distribution of cocaine under which Winslow was convicted. Thus, it would not support civil forfeiture.[6] On the other hand, if the jury were to believe the testimony of Whitiak and his companions, a finding that the property had been used to facilitate a criminal violation covered under the statute, justifying civil forfeiture, would be supported. At this point, we believe a reasonable trier of fact could resolve the genuine question of material fact Winslow has raised concerning the use of his property for the criminal activity with which it is charged in Winslow's favor; and, if that fact finder was so persuaded, Winslow would meet his burden of rebutting the Government's prima facie case that the defendant property was used to facilitate the illegal distribution of cocaine. Accordingly, the district court's order granting summary judgment was incorrect.
 
 
 37
 B. Eighth Amendment Excessive Fines Analysis
 
 
 38
 In opposing summary judgment, Winslow also contended that the Eighth Amendment[7] acts as a limitation on the Government's ability to pursue civil forfeiture. The district court held under then controlling precedent of this Court that the Eighth Amendment was not applicable to civil forfeiture actions. Appendix at 49-50 (quoting United States v. One 107.9 Acre Parcel of Land Located in Warren Township, Bradford County, Pa., 898 F.2d 396 (3d Cir.1990)). Subsequent to the district court's decision, the Supreme Court decided Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), in which it held that forfeiture under Sec. 881(a)(7) was punishment[8] and thus subject to the limitations imposed by the Eighth Amendment's Excessive Fines Clause. Austin, --- U.S. at ----, 113 S.Ct. at 2812; see also Alexander v. United States, --- U.S. ----, ---- - ----, 113 S.Ct. 2766, 2775-76, 125 L.Ed.2d 441 (1993) (Eighth Amendment limitation on excessive fines applicable to forfeiture under criminal RICO provisions). In so holding, the Supreme Court effectively reversed the cases relied upon by the district court. Thus, on remand, the district court may also have to consider whether forfeiture of the defendant property in the case at hand violates the Eighth Amendment prohibition on excessive fines.[9]
 
 
 39
 The majority in Austin declined to establish a "test for determining whether a forfeiture is constitutionally 'excessive.' " Austin, --- U.S. at ----, 113 S.Ct. at 2812. We too will not try to establish such a test at this time. We believe the question of whether any particular civil forfeiture constitutes an unconstitutionally "excessive fine" is a matter which should be resolved by the district court in the first instance upon remand, if its resolution becomes necessary.
 
 
 40
 In an effort to provide some guidance to the district court on remand, we will, however, attempt to identify some of the issues it may have to consider in determining whether a forfeiture is excessive. Acknowledging that civil in rem forfeitures are a form of "punishment," Justice Scalia, in his concurring opinion in Austin, expresses the view that the determination of whether a civil forfeiture is excessive requires an analysis that differs from the analysis traditionally applied to monetary fines. Id. at ---- - ----, 113 S.Ct. at 2813-15 (Scalia, J., concurring). Justice Scalia says the relevant inquiry is whether "the relationship of the property to the offense ... [w]as ... close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" Id. at ----, 113 S.Ct. at 2815. We note, however, that such an inquiry, is by no means the only possible inquiry. See id. at ---- n. 15, 113 S.Ct. at 2812 n. 15 (Majority opinion) ("We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of ... property was excessive."). In considering the relationship between the property and the alleged criminal offense and evaluating whether a proposed forfeiture is an unconstitutionally excessive fine, we suggest the district court should avoid conflating the Eighth Amendment inquiry with Sec. 881(a)(7)'s nexus requirement, although the two share some characteristics.
 
 
 41
 We also note the discomfort Justice Thomas expressed over the broad sweep of the civil forfeiture statute at issue. United States v. James Daniel Good Real Property, --- U.S. at ---- n. 2, 114 S.Ct. at 515 n. 2 (1993) (Thomas, J., concurring in part and dissenting in part). Justice Thomas observes:
 
 
 42
 A strong argument can be made, however, that Sec. 881(a)(7) is so broad that it differs not only in degree, but in kind, from its historical antecedents.... Indeed, it is unclear whether the central theory behind in rem forfeiture, the fiction "that the thing is primarily considered the offender," ... can fully justify the immense scope of Sec. 881(a)(7). Under this provision, "large tracts of land [and improvements thereon] which have no connection with crime other than being the location where a drug transaction occurred," ... are subject to forfeiture. It is difficult to see how such real property is necessarily in any sense "guilty" of an offense.... Given that current practice under Sec. 881(a)(7) appears to be far removed from the legal fiction upon which the civil forfeiture doctrine is based, it may be necessary--in an appropriate case--to reevaluate our generally deferential approach to legislative judgments in this area of civil forfeiture.
 
 
 43
 Id. at ----, 114 S.Ct. at 515 (citations omitted).
 
 
 44
 Prior to Austin, the United States Court of Appeals for the Second Circuit was the only court of appeals to hold that the Eighth Amendment potentially limited civil forfeitures. See 38 Whalers Cove Drive, 954 F.2d at 35-36 (holding that the Supreme Court's decision in Halper applied to civil forfeitures). In 38 Whalers Cove Drive, the court, however, framed the inquiry somewhat differently from the Supreme Court in Austin. Whereas Austin holds the Eighth Amendment excessive fines clause is applicable to all civil forfeitures, the court of appeals in 38 Whalers Cove Drive appears to have approached the question of whether a particular forfeiture is subject to limitation by the Eighth Amendment excessive fines clause on a case by case basis.
 
 
 45
 Specifically, the court of appeals in 38 Whalers Cove Drive seems to say an affirmative answer to the question of whether any particular forfeiture can be viewed as punitive in nature is a prerequisite to application of the Eighth Amendment prohibition on excessive fees. The court of appeals stated a "forfeiture under 21 U.S.C. Sec. 881(a)(7) will not be presumed punitive where the seized property has been used substantially to accomplish illegal purposes, so that the property itself can be said to be 'culpable' or an instrumentality of a crime." Id. at 36 (citing Dobbins' Distillery v. United States, 96 U.S. 395, 401, 24 L.Ed. 637 (1878)). The court continued: "Where the seized property is not itself an instrumentality of crime, however, and its total value is overwhelmingly disproportionate to the value of controlled substances involved in the statutory violation, there is a rebuttable presumption that the forfeiture is punitive in nature." Id. (emphasis in original). In determining this proportionality, the court of appeals indicated that the Government was entitled to demonstrate the "costs and damages attributable to the criminal misconduct of the claimant[,]" costs of investigation and detection, as well as a reasonable allocation of the general cost of enforcing the statute that had been violated. Id. at 37.
 
 
 46
 In light of the Supreme Court's holding in Austin that all civil forfeitures under Sec. 881(a)(7) constitute punishment limited by the Eighth Amendment's Excessive Fines Clause, the analysis of the court of appeals in 38 Whalers Cove Drive is questionable. Before Austin, however, several commentators relied on it to formulate an analytical tool for resolving the question of whether a particular fine is unconstitutionally excessive. See Amicus Curiae Brief of the National Association of Criminal Defense Lawyers, Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); David J. Stone, Note, The Opportunity of Austin v. United States: Toward a Functional Approach to Civil Forfeiture and the Eighth Amendment, 73 B.U.L.Rev. 427 (1993); Ron Champoux, Note, Real Property Forfeiture Under Federal Drug Laws: Does the Punishment Outweigh the Crime?, 30 Hastings Const.L.Q. 247 (1992). We think, therefore, the factors articulated in 38 Whalers Cove Drive may offer some help in analyzing the excessiveness issue.
 
 
 47
 The Supreme Court's formulation of the proportionality inquiry in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983),[10] may also provide direction in formulating an Eighth Amendment excessive fines analysis. Solem presented the question of whether a sentence of life imprisonment, imposed by a state court for a felony, violated the Eighth Amendment because it was disproportionate to the crime charged. Id. at 279, 103 S.Ct. at 3004. The Supreme Court held that the Cruel and Unusual Punishment Clause of the Eighth Amendment implicitly required criminal punishments to be at least loosely[11] proportionate to the crime of conviction. Id. at 290, 103 S.Ct. at 3009. The basis for the Supreme Court's decision was its reasoning that "the Eighth Amendment imposes 'parallel limitations' on bail, fines and other punishments...." Id. at 288-89, 103 S.Ct. at 3009 (quoting Ingraham v. Wright, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977)) (emphasis added). In reaching this conclusion, the Supreme Court reviewed the history of the Eighth Amendment. Id. at 284-86, 103 S.Ct. at 3006-07. It traced the Eighth Amendment to Magna Carta's prohibition against excessive "amercements."[12] Id. at 284 & n. 9, 103 S.Ct. at 3006 & n. 9.
 
 
 48
 In Solem, the Supreme Court identified three objective criteria for use in an Eighth Amendment proportionality analysis: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."[13] Id. at 292, 103 S.Ct. at 3010. The Supreme Court also said that in weighing these factors a court should take into account the "absolute magnitude of the crime" and the "culpability of the offender." Id. at 292-94, 103 S.Ct. at 3010-12.
 
 
 49
 This Court's decision in United States v. Sarbello, 985 F.2d 716 (3d Cir.1993), also provides some direction on the proportionality inquiry that is to be applied in analyzing whether a particular fine is excessive. In Sarbello, we looked to Solem for help in analyzing proportionality. Specifically, we were concerned with whether a criminal RICO forfeiture violated the excessive fines clause of the amendment. Id. at 722-23. Acknowledging that Harmelin called into question Solem 's continuing vitality, we nevertheless stated that "some proportionality analysis is required upon the defendant's prima facie showing that [the forfeiture] is grossly disproportionate or bears no close relation, to the seriousness of the crime." Id. at 724. Moreover, we stated:
 
 
 50
 a district court's proportionality analysis, while it will not in every case be extensive or encompass the three factors set forth in Solem, must necessarily accommodate the facts of the case and weigh the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach, against the severity of the criminal sanction. Other helpful inquiries might include an assessment of the personal benefit reaped by the defendant, the defendant's motive and culpability, and, of course, the extent that the defendant's interest and the enterprise itself are tainted by criminal conduct. The language of the eighth amendment demands that a constitutionally cognizable disproportionality reach such a level of excessiveness that in justice the punishment is more criminal than the crime.
 
 
 51
 Id. at 724 (citation omitted).
 
 
 52
 In concluding that the punishment in Solem was so disproportionate that it violated the Eighth Amendment, the Supreme Court compared the sentences imposed for commission of the same crime within and outside the jurisdiction of conviction. Solem, 463 U.S. at 297-303, 103 S.Ct. at 3013-16. The Government in the case at hand urges a similar analysis in its supplemental brief. See Supplemental Memorandum of the United States at 8-9. It argues that, here, forfeiture of the defendant property is not an unconstitutionally excessive fine when compared with the fines the United States Sentencing Guidelines ("Guidelines") permit for Winslow's criminal offense. Id. at 8. The Government asserts Winslow faced fines ranging from a minimum of $7,500 to a maximum of one million dollars. Id. at 9; see 21 U.S.C.A. Sec. 841(b)(1)(C) (West Supp.1993) ("[A]ny person who [possesses cocaine with intent to distribute] shall be sentenced as follows: ... to ... a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $1,000,000.00 if the defendant is an individual...."). We note, however, that this method may require the Government to prove the amounts of cocaine Winslow actually distributed from the property.
 
 
 53
 Finally, we note that neither Austin nor Alexander addresses the question of whether judge or jury decides if a civil forfeiture is excessive. This Court has likewise not spoken on this question. While the forfeiture statute incorporates the Supplemental Rules for Certain Admiralty and Maritime Claims, at least two courts have held that a defendant property owner is entitled to a jury trial on the issue of civil forfeiture. See United States v. One 1976 Mercedes Benz 280S, Serial No. 11602012072193, 618 F.2d 453, 456-69 (7th Cir.1980) (extensively reviewing common law jurisprudence and concluding that owner of property claimed to be subject to civil forfeiture has right to jury trial); United States v. 2101, 2280, 2401 & 2501 Maple St., 750 F.Supp. 817, 818-19 (E.D.Mich.1990) (distinguishing real property forfeitures from those in admiralty and concluding that real property forfeitures, despite incorporation of admiralty rules, are not maritime and thus subject to common law right to jury trial which Seventh Amendment preserves). In One 1976 Mercedes Benz 280S, the Court of Appeals for the Seventh Circuit specifically stated that in a civil forfeiture proceeding under the drug laws, "the infusion of the earthy common sense of a jury might upon occasion mitigate appropriately the harsh impact sometimes characteristic of in rem procedure." One 1976 Mercedes Benz 280S, 618 F.2d at 469. This question too must be left to the district court in the first instance. Considering the present uncertainty of the law, however, it might, in the interest of judicial efficiency, consider submitting the question to a jury on a special interrogatory and then alternately treating the answer as non-binding and decide the excessiveness question itself.
 
 IV. Conclusion
 
 54
 In summary, we conclude Winslow's affidavit poses a triable issue of material fact on the issue of the property's nexus to his criminal activity. Moreover, we now know from Austin that the Eighth Amendment's Excessive Fines Clause does limit the extent of a civil forfeiture. We will, therefore, reverse the district court's order of summary judgment on behalf of the Government and remand for further proceedings consistent with this opinion. Specifically, on the present record, a trier of fact will have to determine whether the defendant property was in fact utilized to facilitate a violation of the federal drug laws. If the requisite nexus is established, the appropriate trier of fact should then determine whether under all the circumstances forfeiture of the defendant property would effect an "excessive" fine in violation of the Eighth Amendment.
 
 
 
 [1]
 21 U.S.C.A. Sec. 841(a) provides:
 Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
 (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
 21 U.S.C.A. Sec. 841(a) (West 1981).
 
 
 [2]
 Section 853(a) provides for criminal forfeiture as follows:
 Any person convicted of a violation of this subchapter ... punishable by imprisonment for more than one year shall forfeit to the United States ...
 (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation....
 21 U.S.C.A. Sec. 853(a) (West Supp.1993).
 
 
 [3]
 Winslow's affidavit fails to address specifically the existence of the checks or Whitiak's assertion that they were in payment for cocaine purchased from Winslow at the defendant property. Winslow's testimony at his criminal trial indicated that he had cashed the checks for Whitiak pursuant to an agreement which entitled him to retain a percentage of the face amount of the check. While testifying at trial, Winslow stated that Whitiak had promised him a percentage of the money received each time he cashed a check for Whitiak. According to Winslow, Whitiak stated that "he was not allowed to cash the checks himself and he wanted to use the money personally and it was a business loan." Supplemental Appendix at 163. Winslow also indicated that some of the signatures represented as his endorsements on the checks were not in fact his signature
 
 
 [4]
 This last assertion is not material to the issue before us. It would be material if the government sought to forfeit the property under 21 U.S.C.A. Sec. 881(a)(6) which provides for the forfeiture of "all proceeds traceable" to an exchange of controlled substances. See 21 U.S.C.A. Sec. 881(a)(6) (West 1981). Under this subsection, the government may seek forfeiture of property purchased with proceeds from drug transactions. In the case at hand, the government does not allege that Winslow purchased the defendant property with drug proceeds
 
 
 [5]
 We note in passing the Supreme Court's recent holding in United States v. James Daniel Good Real Property, --- U.S. ----, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), that the due process requirements of pre-seizure hearing and notice are applicable to civil in rem forfeiture proceedings against real property. James Daniel Good Real Property, --- U.S. at ---- - ----, 114 S.Ct. at 498-507. The parties, however, have not heretofore raised the issue of whether the government's seizure of Winslow's property violated due process either in the district court or here. Thus, we do not consider whether the district court should vacate the seizure order and restore the property to Winslow pending final determination of the forfeiture proceeding or whether Winslow is entitled to damages for the unlawful detention of his property. If those questions arise on remand, it will be for the district court to decide them in the first instance
 
 
 [6]
 The fact that Winslow admits to storing cocaine on the defendant property for his own personal use is insufficient standing alone to support forfeiture of the defendant property. Section 881(a)(7) directs forfeiture of property used to facilitate a violation of the federal drug laws, which is punishable by "more than one year's imprisonment...." 21 U.S.C.A. Sec. 881(a)(7) (emphasis added). Evidence supporting a finding that Winslow merely possessed a controlled substance on the property, as opposed to his possession there with an intent to distribute it, is a violation of 21 U.S.C.A. Sec. 844 (West Supp.1993). Section 844(a) provides:
 (a) Simple Possession
 It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order.... Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, and shall be fined....
 21 U.S.C.A. Sec. 844(a) (emphasis added). Thus, the forfeiture statute does not apply to a violation of the federal drug laws which consists of mere possession because it requires that the alleged violation be punishable by more than one year of imprisonment.
 
 
 [7]
 It states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII
 
 
 [8]
 In Austin, the Supreme Court relied on United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) and Browning Ferris Industries v. Kelco Disposal, Inc., 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), in reaching its conclusion that the civil forfeiture statutes constitute a "punishment." Austin, --- U.S. at ---- - ----, 113 S.Ct. at 2808-12. The Court stated:
 [E]ven assuming that [Sec. 881(a)(7) ] serve[s] some remedial purpose, the Government's argument must fail. "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term."
 Id. at ----, 113 S.Ct. at 2812 (quoting Halper, 490 U.S. at 448, 109 S.Ct. at 1902)).
 
 
 [9]
 Because we reverse the district court's order granting summary judgment and remand this case for trial, we do not reach the question whether the Supreme Court's decision in Austin applies to cases not yet final at the time Austin was decided. We note, however, several recent decisions that indicate a trend in that direction. United States v. Borromeo, 1 F.3d 219 (4th Cir.1993); United States v. 835 Seventh St., 832 F.Supp. 43 (N.D.N.Y.1993)
 
 
 [10]
 Solem seems to have been severely limited by Harmelin v. Michigan, --- U.S. ----, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), in which Justice Scalia and Chief Justice Rehnquist concluded that the Eighth Amendment prohibition against cruel and unusual punishment does not contain a proportionality guarantee, Harmelin, --- U.S. at ---- - ----, 111 S.Ct. at 2684-2699, and Justices Kennedy, O'Connor, and Souter adopted a more limited view of the proportionality analysis than that promulgated in Solem. Id. at ----, 111 S.Ct. at 2705 (Kennedy, J., concurring in part). Justices Kennedy, O'Connor, and Souter indicated that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id.; see also United States v. Sarbello, 985 F.2d 716, 723 (3d Cir.1993)
 Harmelin, however, is distinguishable from this case because it interprets the Cruel and Unusual Punishment Clause of the Eighth Amendment, not the Excessive Fines Clause. Justice Scalia indicated that excessive fines analysis raises different issues than that raised by cruel and unusual punishment analysis. See Harmelin, --- U.S. at ---- n. 9, 111 S.Ct. at 2693 n. 9 ("There is good reason to be concerned that fines, uniquely of all punishments, will be imposed in a measure out of accord with the penal goals of retribution and deterrence."). Thus, a proportionality analysis under Solem may still have continuing validity on whether a fine is excessive under the Eighth Amendment.
 
 
 [11]
 With respect to restraints of liberty, the relation is necessarily loose and the proportion rough if the Sentencing Guidelines are to survive
 
 
 [12]
 An amercement was a common criminal sanction at the time of Magna Carta and is akin to a modern day fine. Solem, 463 U.S. at 284 n. 8, 103 S.Ct. at 3006 n. 8 (citing 2 F. Pollock & F. Maitland, The History of English Law 513-15 (3d ed. 1909)). Blackstone says that the reasonableness of a fine must be determined by reference to Magna Carta's prohibition of excessive amercements. Specifically, Blackstone says "no man shall have a larger amercement imposed upon him, than his circumstances or personal estate will bear: saving to the landholder his contenement, or land; to the trader his merchandize; and to the countryman his wainage, or team and instruments of husbandry." 4 William Blackstone, Commentaries
 
 
 [13]
 The Supreme Court specifically noted, however, that "no one factor will be dispositive in a given case." Solem, 463 U.S. at 290 n. 17, 103 S.Ct. at 3010 n. 17