**UNITED STATES of America, Plaintiff,**

v.

**ONE PARCEL OF PROPERTY LOCATED AT SHELLY'S RIVERSIDE HEIGHTS LOT X, McVEYTOWN, MIFFLIN COUNTY PENNSYLVANIA, with all Appurtenances and Improvements thereon, Defendant.**

Civ. A. No. 1:CV–93–598.

United States District Court, M.D. Pennsylvania.

Aug. 5, 1994.

John J. McCann, U.S. Attys. Office, Lewisburg, PA, for plaintiff.

Spero T. Lappas, Harrisburg, PA, for defendant.

---

Tab R. Deaner, pro se.

## MEMORANDUM

CALDWELL, District Judge.

We are considering the Government's motion for reconsideration of our Memorandum and Order of May 5, 1994. We exercise jurisdiction under 28 U.S.C. § 1331.

### I. *Facts*

We recounted the facts in some detail in our earlier Memorandum and Order. Thus, we will recount them only briefly and refer to them in greater detail as needed during our analysis. *See United States v. One Parcel of Property Located at Shelly's Riverside Heights,* 851 F.Supp. 633 (M.D.Pa.1994) (Caldwell, J.). This case revolves around a 10–acre tract of land in Mifflin County, Pennsylvania, on which sits a cabin. The property is owned in joint tenancy by claimant Tab Deaner and his girlfriend, Melissa Kurtz.[1] In the Winter and Spring of 1992, agents of the federal Drug Enforcement Administration began an investigation into possible marijuana cultivation at the cabin. The agents conducted surveillance, probed the property's trash, and flew over the property in an airplane equipped with a thermal-imaging device. Mr. Deaner and Ms. Kurtz were arrested in April, 1992. In August, 1992, Judge James McClure of this court accepted guilty pleas from both. Mr. Deaner plead guilty to manufacturing marijuana and was sentenced to 21 months in prison and no fine. Ms. Kurtz plead guilty to possessing marijuana and was sentenced to 12 months probation and assessed a $500 fine. In April, 1993, the Government filed a civil forfeiture action, seeking to take the entire property. Only Mr. Deaner filed a claim, but he failed to file an answer. The Government filed a motion for summary judgment and for default, which Mr. Deaner opposed. Mr. Deaner cited *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), in which the Supreme Court held that civil forfeiture actions are subject to a proportionality require-

ment under the Eighth Amendment. We directed the Government to address the *Austin* issue and it did so. Subsequently, Mr. Deaner moved for leave to file an answer *nunc pro tunc.* On May 5, 1994, we issued a Memorandum and Order denying the Government's motions, granting Mr. Deaner's motion for leave to file an answer, and granting summary judgment in favor of the property *sua sponte.* The Government has filed a motion for reconsideration.

### II. *Law and Discussion*

We will address in turn the areas in which the Government claims our Memorandum and Order of May 5, 1994, was in error.

#### A. *Granting Summary Judgment* Sua Sponte

■ In our order of July 8, 1994, we noted that the United States Court of Appeals for the Third Circuit had indicated in *Otis Elevator Company v. George Washington Hotel Corporation,* 27 F.3d 903 (3d Cir.1994), that a district court must give notice to the parties before entering summary judgment *sua sponte.* Rather than vacate the judgment in this case, we afforded the Government an opportunity to supplement the record and file a brief opposing the *sua sponte* summary judgment. In this way, we have afforded the Government the notice and opportunity referred to by the Third Circuit in *Otis Elevator* and cured any procedural deficiency.

■ The Government argues in its reconsideration motion that Mr. Deaner presented no affidavits or other record evidence. This argument is without merit. There are two ways in which a party can successfully oppose a motion for summary judgment: (1) by demonstrating that there remain material issues of fact precluding summary judgment, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), or (2) by agreeing that there are no material issues of fact yet showing that the application of the

---

1. In our earlier Memorandum and Order, we referred to a letter written by Mr. Deaner to the Court. The Government indicates that it was not served with a copy of that letter. We wish to assure the Government that we did not rely on the letter for any material information. Rather, we referred to it only in describing the history of how the cabin was built, which, of course, plays no substantive part in our resolution of this matter.

law on those facts warrants judgment for the summary judgment opponent. In the instant case, Mr. Deaner did not dispute the facts presented by the Government; rather, he argued that the law as applied to those facts does not warrant the result sought by the Government.

## B. Default

■ The Government argues that we improperly failed to consider the effect of Ms. Kurtz's default. As noted, we concluded that her default had no real effect because the defendant in this case is the property itself; thus, a claimant serves largely to offer arguments on behalf of the property. As Mr. Deaner had properly argued that *Austin* applied and that this forfeiture would be excessive, the property was adequately defended.

The Government cites *United States v. Parcel of Real Property Known as 1500 Lincoln Avenue*, 949 F.2d 73 (3d Cir.1991), in support of its argument. In an important way, *1500 Lincoln Avenue* does not further the Government's position. In that case, a husband and wife owned a parcel of property as tenants by the entirety. The husband was engaged in illegal drug transactions and the Government sought forfeiture of the husband and wife's home. The wife asserted an "innocent owner" defense, 21 U.S.C. § 881(a)(7), and the district court agreed with the wife and dismissed the complaint. The United States Court of Appeals for the Third Circuit reversed, holding that the "innocent owner" defense of one owner does not require dismissal of the entire complaint. Rather, the court held that the Government could be entitled to a forfeiture while the wife was entitled to "full and exclusive use and possession of the property during her life [and] protection against conveyance of or execution by third parties upon her husband's former interest, [and] her survivorship right." 949 F.2d at 78.

For the purposes of the analysis of *1500 Lincoln Avenue*, a tenancy by the entirety is functionally the same as a joint tenancy such as that entered into by Mr. Deaner and Ms.

Kurtz. *See United States v. Jacobs*, 306 U.S. 363, 370, 59 S.Ct. 551, 555, 83 L.Ed. 763 (1939); *Coleman v. Jackson*, 286 F.2d 98, 102 (D.C.Cir.1960). Thus, if we were to follow the Government's application of *1500 Lincoln Avenue*, assuming that the civil forfeiture is inappropriate as against Mr. Deaner's interest, we would still have to afford Mr. Deaner at least a life interest in the property. We do not understand the Government to seek that result.

We find a more basic flaw in the Government's invocation of *1500 Lincoln Avenue*. In an "innocent owner" case, the defense arises only *after* the court accepts that forfeiture is appropriate. Only then will the court consider the interest of an innocent owner. Here, we have determined that the property should not be forfeited in the first place. Put differently, the "innocent owner" defense focuses on the interests of an individual owner and seeks to protect them in certain circumstances. The proportionality defense used here focuses on the property and the extent of its culpability vis-a-vis the magnitude of the crime. As such, *1500 Lincoln Avenue* is distinguishable.[2]

## C. Proportionality

■ The Government also questions our analysis of the basic issue in this case: whether the forfeiture of the property was disproportionate to the crime committed. Upon review of our Memorandum and Order of May 5, 1994, the Government's arguments in support of reconsideration, and the Government's brief in opposition to *sua sponte* summary judgment, we are unpersuaded that we erred. Because of that, we will not repeat here the analysis we employed; rather, we will address only those specific arguments offered by the Government.

First, the Government challenges the standard we applied. Part of our analysis relied on the three-part test enunciated in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The Government now asserts that "the Supreme Court has ques-

---

**2.** Indeed, the Government argues in its brief in opposition that the "innocent owner" defense is not available in this case.

tioned *Solem's* viability" in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Government's Brief in Support of Motion for Reconsideration at 13, *citing U.S. v. Premises Known as RR No. 1,* 14 F.3d 864, 874 n. 10, 875 (3d Cir.1994). This suggestion is confusing because the *Premises Known as RR No. 1* court went on to note that

> *Harmelin,* however, is distinguishable from this case because it interprets the Cruel and Unusual Punishment Clause of the Eighth Amendment, not the Excessive Fines Clause. Justice Scalia indicated that excessive fines analysis raises different issues than that raised by cruel and unusual punishment analysis. *See Harmelin,* 501 U.S. at 978 n. 9, 111 S.Ct. at 2693 n. 9 ("There is good reason to be concerned that fines, uniquely of all punishments, will be imposed in a measure out of accord with the penal goals of retribution and deterrence.") *Thus, a proportionality analysis under* Solem *may still have continuing validity on whether a fine is excessive under the Eighth Amendment.*

14 F.3d at 874 n. 10 (emphasis added). Thus, our reliance on *Solem* and several Third Circuit cases was appropriate and we need not revisit that issue. *See also, United States v. One 1988 White Jeep Cherokee,* No. 1993–132, 1994 WL 228996 (D.V.I. April 25, 1994) (forfeiture of vehicle upon discovery of a single marijuana cigarette in the ashtray held to violate the Eighth Amendment).

The Government next argues that we misunderstood the extent of the criminality at play in this case. It argues that the amount of marijuana found in the cabin fairly implies a "commercial marijuana growing and distribution operation." In support of that premise, the Government offers a new affidavit from the DEA case agent. *See* Affidavit of Mark Andrasi at 3 ("Accordingly, the sheer volume of marijuana seized from this location strongly indicates that this marijuana was manufactured for commercial distribution rather than personal use.").

We agree that the amount of marijuana seized (20 lbs.) is a large quantity for purely personal use. However, we find a problem with this new assertion. Although Agent Andrasi believes the amount grown raises a fair presumption of distribution, the Government offered no direct evidence either in the criminal case or here. Apparently, the federal probation officer assigned to the criminal case indicated to Judge McClure that there was "no evidence that the defendant was involved in actual distribution of marijuana." Transcript of Sentencing Hearing at 33. Indeed, Assistant United States Attorney William Behe told Judge McClure at the sentencing hearing

> Well, I don't think that the fact that he did not distribute or at least I couldn't prove that he distributed in any way mitigates the conduct because the crime is simply the growing, the manufacturing of it … The crime is manufacturing and he grew it, although we did not charge him with or we are not arguing that he was distributing it …

*Id.* at 34.[3] Thus, despite Agent Andrasi's affidavit, we can not conclude that the Government has shown that there was distribution in this case.

In the same area, the Government challenges our determination that the criminal conduct was essentially limited to the cabin itself. Agent Andrasi asserts that the following facts implicate the entire property in the offense: (1) the cabin was placed far from the border of the property, (2) the cabin was surrounded by a fence, and (3) there was a dog house approximately 100 yards from the cabin. Andrasi Aff. at 5–6. We can not conclude that these facts, assumed as true, taint the entire property with criminality. The fence and the dog house are as consistent with a legitimate desire for privacy as with any illegal purpose and, in any event, they were within close proximity to the cabin, which we have already recognized as involved in criminal conduct. The position of the cabin on the property is simply irrelevant. If the Government suggests that property is criminally-tainted merely because it creates a physical obstacle for DEA surveillance, we reject the argument.

---

**3.** Of course, Ms. Kurtz plead guilty only to pos-    session.

**154**

The Government goes on to argue that, even if total forfeiture is inappropriate, we have the discretion to mitigate the excessiveness. In its one-paragraph analysis, the Government does not explain how such a principle would apply to this case. We assume that the Government intends to suggest that, if we deny total forfeiture, we should allow something short of that. The Government cites *United States v. Sarbello*, 985 F.2d 716, 718 (3d Cir.1993), for the proposition that a district court may reduce a statutory penalty in order to conform to the Eighth Amendment. While this may be so, we do not see how it would apply to this case. A monetary fine may be lessened by a certain dollar increment; a forfeiture is essentially an all-or-nothing penalty. If the Government means to suggest that we should allow forfeiture of only the cabin if not the entire property, we decline to agree. It is not clear that we have authority to do so and we are not inclined to divide up the property—Solomon-like—leaving a cabin with no access and a parcel of property with an island in the middle.

Finally, in its brief in opposition, the Government argues that it is premature for us to rule on the excessiveness question on a pretrial motion. *See United States v. $633,-021.67 in U.S. Currency*, 842 F.Supp. 528, 535 (N.D.Ga.1993). The court in *$633,021.67* held that it could not examine the excessiveness question because it had not yet determined how much of the property was subject to forfeiture. That is not the case here. The Government has described precisely what property it seeks to take by forfeiture. If the Government cites *$633,021.67* for the proposition that we must first determine that the property should be forfeited before we can reach the excessiveness issue, we reject the argument. Given that the Government seeks to take the entire property, there is no issue about the size or extent of the proposed forfeiture.[4]

---

4. We recognize that a forfeiture analysis ordinarily requires that we inquire into the connection between the property and the criminal conduct. *Premises Known as RR No. 1*, 14 F.3d at 876; *see also, Austin*, —— U.S. at ——, 113 S.Ct. at 2802, 125 L.Ed.2d at 509 (Scalia, J., concurring). In *Premises Known as RR No. 1*, the Third Circuit noted that the appropriate test has two parts: the first to question the nexus and the

### III. *Conclusion*

The Government has challenged our Memorandum and Order of May 5, 1994, on a number of bases, both procedural and substantive. We have carefully reviewed that Memorandum and Order, the briefs, and the file and conclude that there is no reason to reconsider. We allow that the area of civil forfeiture and the Eighth Amendment is something of a legal frontier, with little appellate guidance on the difficult issue of determining excessiveness or disproportionality of forfeitures. Yet, while we in no way minimize the seriousness of the manufacture and use of illicit drugs, we believe our disposition of this matter is in harmony with the Eighth Amendment and the case law.

We will issue an appropriate order.

### *ORDER*

AND NOW, this 5th day of August, 1994, upon consideration of the Government's motion to reconsider, it is ordered that the motion is denied.

second, assuming there is one, to question excessiveness. 14 F.3d at 876. In this matter, we have essentially assumed the first and concentrated on the second. However, we have discussed in this memorandum the extent to which the property is tainted by criminality, *see, ante*, at 153–54, determining that the Government has not shown the criminal conduct to extend beyond the cabin itself.