

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-1997

# Shell Oil Co v. Babbitt

Precedential or Non-Precedential:

Docket
97-7035

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"Shell Oil Co v. Babbitt" (1997). *1997 Decisions.* Paper 223.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/223

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 19, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7035

SHELL OIL COMPANY,

      Appellant

v.

BRUCE BABBITT; THE UNITED STATES
DEPARTMENT OF THE INTERIOR

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 95-00492)

Argued August 14, 1997

BEFORE: STAPLETON, GREENBERG, and COWEN,
Circuit Judges

(Filed: September 19, 1997)

      L. Poe Leggette (argued)
      Jackson & Kelly
      2401 Pennsylvania Avenue, N.W.
      Suite 400
      Washington, D.C. 20037

       Attorneys for Appellant


      Lois J. Schiffer
      Assistant Attorney General
      Gregory M. Sleet
      United States Attorney
      Wilmington, Delaware 19899
      Patricia C. Hannigan
      Assistant United States Attorney
      Wilmington, Delaware 19899
      J. Carol Williams
      Michael J. Robinson
      Robert L. Klarquist (argued)
      Attorneys, Department of Justice
      Environment & Natural Resources
      Division
      P.O. Box 23795, L'Enfant Station

        Washington, D.C. 20026
        Geoffrey Heath
        Lisa K. Hemmer
        Sarah L. Inderbitzin
        Office of the Solicitor
        Department of the Interior
        Washington, D.C. 20240

         Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This case is before this court on an appeal by Shell Oil
Co. ("Shell") from an order of the district court which
sustained an order of the Department of the Interior
Minerals Management Service ("MMS") requiring Shell to
produce certain documents. The district court had
jurisdiction under 28 U.S.C. S 1331, and we have
jurisdiction under 28 U.S.C. S 1291. This appeal turns on
issues of statutory and regulatory interpretation.

I. FACTUAL AND PROCEDURAL HISTORY

Congress has empowered the Department of the Interior
to enter into and administer leases to develop oil and gas

                              2

resources on federal lands. Congress enacted the Federal
Oil and Gas Royalty Management Act ("FOGRMA") in 1983,
to strengthen the ability of the Secretary of the Interior
("Secretary") to collect oil and gas royalties by developing a
comprehensive system of royalty management in order
properly to collect and account for all royalties. 30 U.S.C.
SS 1701 et seq. FOGRMA authorizes the Secretary to "audit
and reconcile, to the extent practicable, all current and
past lease accounts for leases of oil and gas and take
appropriate actions to make additional collection or refunds
as warranted." Section 101(c)(1), 30 U.S.C. S 1711(c)(1).
Section 103(a) of FOGRMA, 30 U.S.C. S 1713(a), deals with
maintenance of information and production of records:

        A lessee, operator, or other person directly involved in
        developing, producing, transporting, purchasing, or
        selling oil or gas subject to this chapter through the
        point of first sale or the point of royalty computation,
        whichever is later, shall establish and maintain any
        records, make any reports, and provide any
        information that the Secretary may, by rule, reasonably
        require for the purposes of implementing this chapter

or determining compliance with rules or orders under this chapter. Upon the request of any officer or employee duly designated by the Secretary or any State or Indian tribe conducting an audit or investigation pursuant to this act, the appropriate records, reports, or information which may be required by this section shall be made available for inspection and duplication by such officer or employee, State, or Indian tribe.

Section 3(12) of FOGRMA defines "person" as "any individual, firm, corporation, association, partnership consortium, or joint venture." 30 U.S.C. S 1702(12). Thus, Shell as a corporation can be a person within section 103(a) and its implementing regulations.

The Secretary has delegated royalty enforcement responsibilities to the Director of the MMS. MMS regulations require "each lessee, operator, revenue payor or other person [to] make and retain accurate and complete records necessary to demonstrate that payments of rentals, royalties . . . and other payments . . . are in compliance with lease terms, regulations, and orders." 30 C.F.R.

3

S 212.51(a). The "lessee, operator, revenue payor, or other person required to keep records" must maintain them for six years and make them available for inspection. 30 C.F.R. S 212.51(b)-(c).

Shell Western E & P, Inc. ("Shell Ex") is primarily a producer of oil and is a wholly owned subsidiary of Shell, which primarily markets oil. App. at 175, 181. Shell Ex produces oil from land within 32 federal leases in California issued under the Mineral Lands Leasing Act, 30 U.S.C. S 181, and pays royalties to the federal government on the oil produced.1 App. at 181. Shell Ex sells much of this oil to Shell pursuant to an agreement dated January 1, 1985, under which Shell pays its posted prices for that geographical area or uses third-party price postings, as was done here because Shell does not post prices for California. App. at 175-76, 290.

The Secretary can delegate audit authority for federal leases to the state in which they are located. 30 U.S.C. S 1735(a). Pursuant to this delegation of authority, the California State Controller's Office ("State") reviewed Shell Ex's onshore leases in California for the period from January 1, 1985, to December 31, 1988. The State requested that Shell provide records relating to its disposition of federally derived oil purchased from Shell Ex, but Shell declined to comply with this request on the basis

that the transactions between Shell Ex and Shell constituted the point of royalty computation. App. at 181-82.

On April 3, 1990, the Denver office of the Royalty Compliance Division of MMS ordered Shell to turn over the documents requested by the State, which included all documents regarding the disposition of federally derived oil, the sales contracts and verification of all revenue from sales of this oil to third parties, and a detailed schematic showing the pipeline system used to transport this oil. App. at 168-69. MMS stated in the order that data regarding Shell's arm's-length sales of the oil were necessary to determine

_____

1. For onshore leases like the ones at issue here, the state in which the leases are located receives 50% of the royalties. 30 U.S.C. S 191.

4

whether the non-arm's length price Shell paid Shell Ex was acceptable for royalty valuation purposes.

Shell appealed this order to the Director of MMS, who sustained the order of the Denver office. The Director ruled that the gross proceeds rule2 required that Shell be considered the "lessee" whenever it resold oil purchased from Shell Ex, and thus the requested documents were necessary to determine the proper royalty valuation. App. at 183-84.

Shell then appealed from the Director's decision to the Interior Board of Land Appeals ("IBLA") which originally ruled in its favor. Shell Oil Co., 130 IBLA 93 (1994). In its opinion the IBLA ruled that under the March 1, 1988 revisions to the MMS regulations, Shell's proceeds are only relevant if Shell is a "marketing affiliate" for Shell Ex. See 30 C.F.R. S 206.102(b)(1)(i) (when oil sold to marketing affiliate, lessee's "gross proceeds" is value obtained by marketing affiliate in arm's-length sale of oil). The IBLA found that Shell was not a marketing affiliate of Shell Ex, as defined in 30 C.F.R. S 206.101, and thus information relating to Shell's proceeds was not relevant. 130 IBLA at 96-97.

The IBLA reversed itself after MMS petitioned for reconsideration. Shell Oil Co. (On reconsideration), 132 IBLA 354 (1995). The IBLA ruled that the marketing affiliate issue was irrelevant to whether the gross proceeds rule applied and information regarding Shell's proceeds from the oil was necessary to determine the value of production. Id. at 356-58. The IBLA later denied Shell's petition to

reconsider this decision.

Shell then filed this suit in the district court in Delaware seeking a declaration that MMS could not order it to

_____

2. This rule was amended on March 1, 1988, and now states that "under no circumstances shall the value of production, for royalty purposes, be less than the gross proceeds accruing to the lessee for lease production, less applicable allowances determined pursuant to the subpart." 30 C.F.R. S 206.102(h). Previously, the rule stated that "[u]nder no circumstances shall the value of production . . . be deemed to be less than the gross proceeds accruing to the lessee from the sale thereof . . . ." 30 C.F.R. S 206.103 (1987).

produce the documents in question. Thus, Shell requested an order vacating the MMS's order. The Secretary of the Interior unsuccessfully sought to have the suit dismissed or transferred on venue grounds. Shell Oil Co. v. Babbitt, 920 F. Supp. 559 (D. Del. 1996). The government then filed a counterclaim seeking enforcement of the MMS order. After both parties moved for summary judgment, the court ruled in favor of the government and upheld the IBLA's decision on November 14, 1996. Shell Oil Co. v. Babbitt, 945 F. Supp. 792 (D. Del. 1996). The district court held that FOGRMA section 103(a), 30 U.S.C. S 1713(a), defined only the class of persons from which the Secretary can obtain documents and did not limit, as Shell argued, the type of documents to be maintained. The court also found that Shell was covered by 30 C.F.R. S 212.51 as an"other person" despite the fact that Shell did not have paying or operating responsibility on the lease.

Shell then filed a timely notice of appeal. Shell now argues that neither section 103(a) of FOGRMA nor 30 C.F.R. S 212.51 gives the Secretary authority to seek documents relating to events after the first sale of oil from a federal lessee, regardless of whether the sale is to an affiliated company. We review the district court's interpretation of both statutes and regulations on a de novo basis. United States v. Brace, 41 F.3d 117, 122 (3d Cir. 1994); Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1279 (3d Cir. 1991). Nevertheless, if Congress has not spoken directly to the question in issue, we will defer to a reasonable construction of a statute by the agency which administers it. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82 (1984). Moreover, we will uphold an agency's interpretation of its own regulations "unless it is plainly erroneous or inconsistent with the

regulation." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 2386 (1994).3

_____

3. A challenge to the validity of a subpoena for similar documents covering 1989-96 is pending in United States v. Shell Oil Co., Misc. No. 31372 (C.D. Cal.). Shell also is challenging an MMS order to pay additional royalties for a portion of the time period at issue here. Shell Oil Co. v. Babbitt, No. 96-CV-1078-H (N.D. Okla.).

6

## II. DISCUSSION

### A. Section 103(a) of FOGRMA

Shell argues that section 103(a) does not give the Secretary the authority to seek the requested documents relating to Shell's disposition of the oil it bought from Shell Ex. It contends that the Secretary and the district court erred in determining that the underlined portion of section 103(a) -- "A lessee, operator, or other person directly involved in developing, producing, transporting, purchasing, or selling oil or gas subject to this chapter through the point of first sale or the point of royalty computation, whichever is later, shall establish and maintain any records . . ." 30 U.S.C. S 1713(a) (emphasis added) -- limited only the class of persons from whom the Secretary could request documents and did not limit the type of document involved. Shell contends that the phrase "through the point of first sale or the point of royalty computation" limits the type of documents, not the type of person.

In a case almost directly on point, the Court of Appeals for the Tenth Circuit ruled that MMS has the authority to request exactly the type of documents at issue here, records of subsequent sales by a company which purchased oil from an affiliated federal lessee.4 Santa Fe Energy Prods. Co. v. McCutcheon, 90 F.3d 409 (10th Cir. 1996). While the Santa Fe court did not specifically address the argument Shell raises here, it ruled that section 103(a) covers the first purchaser of oil produced under a federal lease because such a purchaser is a " `person directly involved in . . . purchasing . . . oil or gas subject to this chapter through the point of first sale or royalty computation.' " Id. at 414 (quoting 30 U.S.C. S 1713(a)).

The Secretary urges precisely this interpretation of FOGRMA here. We agree with both the Secretary and the Court of Appeals for the Tenth Circuit. Further, wefind that this interpretation is the most natural reading of the

4. Shell does not distinguish this case except to note that the court did not discuss the legislative history of FOGRMA. Br. at 32 n.20.

statute,5 and thus the intent of Congress is clear without resort to the legislative history. See Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82. We therefore do not comment on Shell's exhaustive discussion of the legislative history of FOGRMA except to say that we do not find sufficient remarks dealing with the narrow issue in this case to support its position. Id. at 862, 104 S.Ct. at 2791. Since the legislative history does not compel a different result, we must find the plain language of the statute dispositive. Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056 (1980).

B. Implementing Regulation

Shell also argues that the implementing regulation for section 103 of FOGRMA, 30 C.F.R. S 212.51, does not apply in this case. Section 212.51(a) provides:

> Each lessee, operator, revenue payor, or other person shall make and retain accurate and complete records necessary to demonstrate that payments of rentals, royalties, net profit shares, and other payments related to offshore and onshore Federal and Indian oil and gas leases are in compliance with lease terms, regulations, and orders. Records covered by this section include those specified by lease terms, notices and orders, and by the various parts of this chapter. Records also include computer programs, automated files, and supporting systems documentation used to produce automated reports or magnetic tape submitted to the Minerals Management Service (MMS) for use in its Auditing and Financial System (AFS) and Production Accounting and Auditing System (PAAS).

_____

5. We do not find the "acute redundancy" which Shell argues this reading of the statute creates. Br. at 25. The phrase "directly involved" in section 103(a) of FOGRMA modifies a number of activities in addition to purchasing oil (developing, transporting, selling). Shell's argument that the parties involved in the first sale of oil necessarily are directly involved in purchasing oil is true, but someone directly involved in transporting oil is not, and the phrase "through the point of first sale" is therefore necessary to limit the class of people required to maintain

records. Without the limitation, section 103(a) could apply far downstream.

8

Shell argues that only those documents specified in the latter two sentences of section 212.51(a) can be requested. The Secretary contends that the regulation creates a duty to maintain all documents "necessary to demonstrate" that the lessee is complying with royalty requirements and that the second and third sentences are illustrations rather than an exhaustive list. The Secretary contends that the language of the regulation neither states nor implies that the examples listed are complete. It merely says that required records "include" those listed. See 30 C.F.R. S 212.51(a).

Shell argues that the Secretary's "original intent" in drafting the regulation supports its view. Shell's main support for this "intent" argument is that the preamble does not explicitly deny the reading Shell urges. We, however, do not find that the preamble resolves the issue. Shell also argues that the Secretary's statements to the Office of Management and Budget under the Paperwork Reduction Act ("PRA"), 44 U.S.C. SS 3501 et seq., do not support the Secretary's current interpretation of the regulation. Shell does not mention that the PRA does not apply to the collection of information during FOGRMA audits. See Phillips Petroleum Co. v. Lujan, 963 F.2d 1380, 1387 (10th Cir. 1992) (discussing 44 U.S.C. S 3518(c)(1)(B) PRA exemption for administrative investigations).

Shell also argues that it is not covered under the regulation because the last sentence of section 212.51(b) states: "Lessees, operators, revenue payors, or other persons shall maintain the records generated during the period for which they have paying or operating responsibility on the lease for a period of 6 years." Shell argues that this 6-year limit only applies to "lessees, operators, revenue payors, or other persons" who have "paying or operating responsibility on the lease" and since Shell does not have such responsibility the limit does not apply to it. Thus, according to Shell, either Shell has to keep records forever, or it does not have a duty to keep records at all. In other words, in its view Shell is not an "other person" under section 212.51(a). Since FOGRMA itself also imposes a 6-year record-keeping limitation period, 30 U.S.C. S 1713(b), Shell contends that section

9

212.51 also applies only to persons having paying or operating responsibility.

While this is an intricately constructed argument, it ultimately collapses under its own weight. We acknowledge that there is some ambiguity in section 212.51(b), but Shell proposes that we resolve that ambiguity by distorting section 212.51(a). The plain language of section 212.51(a) makes clear that it applies to "other persons" in addition to operators and payors, and it does not make sense to read other persons as "other persons with paying or operating responsibility."

Shell has failed to demonstrate that the agency's interpretation of section 212.51 is "plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ., 512 U.S. at 512, 114 S.Ct. at 2386. We therefore must give the interpretation "controlling weight," id., and affirm the district court's ruling that section 212.51 applies to Shell and MMS has authority to order the production of the documents at issue.

C. 1988 Regulatory Amendments

We address one final issue. On March 1, 1988, amended royalty valuation regulations became effective. These regulations apply only to oil produced after their effective date, see Santa Fe, 90 F.3d at 413, which is only the last ten months of the period at issue here. For the bulk of the period in this case, Santa Fe is applicable, and we follow it and hold that the Secretary clearly has authority to seek the requested documents. For the last ten months, however, we must consider the effect of the new regulations, an issue Sante Fe did not address explicitly.

Under 30 C.F.R. S 206.102(b)(1)(i), when oil is sold or transferred by a federal lessee to its marketing affiliate, which then resells it, the value of the oil for royalty purposes is the value the marketing affiliate receives from an arm's-length purchaser. Shell, however, is not a marketing affiliate of Shell Ex because it does not acquire and market oil only from Shell Ex. See 30 C.F.R. S 206.101. Non-arm's-length transactions, other than with marketing affiliates, are covered by 30 C.F.R. S 206.102(c), which lists

10

several different methods of royalty computation. The IBLA originally found that the third-party posted prices used in the sales from Shell Ex to Shell met the requirements of 30 C.F.R. S 206.102(c)(2). Given this holding, MMS did not

need the documents requested because the gross proceeds rule is only applicable to an affiliate when it is a marketing affiliate, thus distinguishing Santa Fe. 130 IBLA at 97. On reconsideration, however, the IBLA determined that the marketing affiliate distinction was not relevant to this case because the gross proceeds rule, 30 C.F.R. S 206.102(h), supersedes all other royalty calculation methods. 132 IBLA at 355-56.

It is undisputed that Shell paid Shell Ex a "market price" for the federally derived oil it purchased. The gross proceeds rule requires that the federal royalties be based, at a minimum, on what the lessee receives for the oil, not the "market price" of the oil. If Shell Ex sold the oil at a premium above the market price, federal royalties would be based on that premium price. Shell appears to be arguing that it can avoid this result by purchasing the oil from Shell Ex at the market price and then reselling it at a premium itself. MMS is entitled to documents which will allow it to determine if Shell Ex is undervaluing oil for royalty purposes by first transferring it to Shell. Whether or not that is so we are satisfied that for auditing purposes Shell must disclose the records the State requested.

III. CONCLUSION

We conclude by emphasizing that our ruling is narrow. We do not find that MMS can impute the proceeds received by Shell to Shell Ex. We will leave the determination of that issue to a case in which it is presented. Thus, we agree with Shell that this appeal "does not directly concern the proper value of royalties on oil produced from [Shell Ex's] 32 leases." Br. at 7. Consequently, we hold only that given an administrative agency's broad investigative authority, see United States v. Morton Salt Co., 338 U.S. 632, 642-43, 70 S.Ct. 357, 364 (1950), and the statutory and regulatory scheme we have described, MMS is authorized to order the production of documents relating to Shell's arm's-length sales of the oil it purchased from Shell Ex in non-arm's-

11

length transactions. In the circumstances, we will affirm the order of the district court entered November 11, 1996.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

12