

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-1998

# Yskamp v. DEA

Precedential or Non-Precedential:

Docket 98-6148

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Yskamp v. DEA" (1998). *1998 Decisions.* Paper 280.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/280

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 21, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-6148

PETER YSKAMP; CIGNA CORP., in its individual capacity
and in its capacity as subrogee to the rights and interest
of Peter Yskamp, and in its capacity as subrogee to the
rights and interest of James E. Haldan, deceased

v.

DRUG ENFORCEMENT ADMINISTRATION

CIGNA CORP.,

      Petitioner

On Review of a Decision of
the Drug Enforcement Agency
(RI-94-0015)

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 14, 1998

Before: SLOVITER and COWEN, Circuit Judges,
and OBERDORFER, District Judge*

(Filed December 21, 1998)

      John S. Hoff
      Hoff & Garley
      Chicago, IL 60603

      Attorney for Petitioner
_____

*Hon. Louis F. Oberdorfer, United States District Court for the District
of Columbia, sitting by designation.

Robert A. Zauzmer
Office of United States Attorney
Philadelphia, PA 19106

 Attorney for Respondent

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant CIGNA Corp. ("CIGNA") seeks review of the
1994 administrative forfeiture of a Lear jet by the Drug
Enforcement Administration ("DEA"). CIGNA contends that
because the value of the aircraft seized exceeded $500,000,
it was improper for the DEA to use administrative forfeiture
instead of judicial forfeiture. Additionally, CIGNA raises
several constitutional grounds for reversing the forfeiture.
For the reasons stated herein, we will deny CIGNA's Petition
for Review.

I.

Peter Yskamp purchased the Lear jet in 1991 for use in
a charter operation certified by the Federal Aviation
Administration ("FAA"). James E. Haldan held a lien on the
jet pursuant to a security agreement signed in August
1991, a few days before Yskamp purchased the jet, but that
agreement was not filed with the FAA (as required by law)
until after seizure of the plane more than three years later.
CIGNA insured the jet under a standard policy which was
later amended at Yskamp's request to cover losses caused
by war or confiscation.

In September 1994, DEA officers who had become
suspicious of the activities of certain suspects tracked them
to the Bermuda Dunes airport in California. The suspects
unloaded luggage from a truck into Yskamp's jet. After the
suspects boarded the jet, the officers approached and
requested permission to search it, which was granted. On
board, the officers found 12 pieces of luggage containing
300 kgs of cocaine.

When questioned afterwards, Yskamp conceded that this flight and a prior one with the same suspects were odd, because the bulk of the payment was in cash, the travelers had significantly more luggage in one direction than the other, and the turn-around time was short. Additionally, when questioned by the DEA, pilots for Yskamp stated initially (but later retracted when Yskamp was present) that they had informed him of their suspicions, and that he told them to ignore these concerns.

Following the DEA's seizure of the jet, Yskamp filed a claim for loss with CIGNA, which CIGNA approved and paid under his amended insurance policy. As provided in the contract, CIGNA then became Yskamp's subrogee. CIGNA also paid the outstanding loan balance owed Haldan, even though Haldan was not named on the policy, and then claimed status as Haldan's subrogee, as well. Finally, by paying Yskamp's insurance claim, CIGNA became owner of the jet outright in addition to his subrogee.

Pursuant to the administrative forfeiture provision in 19 U.S.C. S 1607, the DEA mailed notices of seizure dated October 11, 1994, to Yskamp and Haldan. The mailed notices contained information on the first date set for public notice of the seizure, the appraised value of the property seized ($1 million), and the federal judicial district in which the seizure took place. The notices also explained that the party could post a $5000 bond and pursue judicial forfeiture proceedings as an alternative pursuant to the statute.

Attorney John Scott Hoff (CIGNA's counsel here) notified the DEA of his representation of both CIGNA and Yskamp on October 11, 1994. Included with this notice was a petition for expedited release of the jet. The DEA then issued a notice of seizure addressed to Yskamp c/o Hoff as his attorney. CIGNA wrote to the DEA on November 15, 1994, confirming its understanding that the DEA would proceed on the petition for expedited release and stating that CIGNA's decision whether to post bond was still pending.

CIGNA failed to post the judicial bond and, on December 16, the DEA administratively forfeited the jet. Several days

later, the DEA denied CIGNA's expedited release petition, but agreed to treat CIGNA's submission as a petition for discretionary mitigation or remission and agreed to CIGNA's filing of additional documentation for that purpose.

Following the submission of additional information, the DEA denied the mitigation or remission petition. The DEA concluded, inter alia, that neither Yskamp nor CIGNA had taken reasonable steps to assure that the jet was not used for conveying illegal drugs. CIGNA filed a petition for reconsideration of the forfeiture based on the DEA's failure to consider CIGNA's status as subrogee of Haldan's interest. The DEA denied that petition in August 1996.

In September 1996, CIGNA, together with Yskamp, timely filed in the Court of Appeals for the Ninth Circuit a Joint Petition for Review of the DEA's order of forfeiture. The court dismissed the claims of Yskamp as well as those of CIGNA as subrogee of both Yskamp and Haldan for lack of jurisdiction, reasoning that Yskamp was not an aggrieved party, and that Haldan was merely an unsecured creditor with whom CIGNA had no relationship creating subrogation. The court then transferred the remainder of the case to this court on jurisdictional grounds pursuant to 28 U.S.C. S 1631. CIGNA pursues review of the forfeiture on its own behalf as owner of the jet.

We have jurisdiction pursuant to 21 U.S.C. S 877. We will set aside the agency's determination only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 5 U.S.C. S 706(2); Humphreys v. DEA, 96 F.3d 658, 660 (3d Cir. 1996). However, appeal from a petition for remission or mitigation is limited to assuring that the DEA complied with statutory and procedural requirements. See Schrob v. Catterson, 948 F.2d 1402, 1412 n.9 (3d Cir. 1991); United States v. Kravitz, 738 F.2d 102, 105 (3d Cir. 1984) ("[T]he remission decision of the Attorney General is not open to judicial review."); see also Marshall Leasing, Inc. v. United States, 893 F.2d 1096 (9th Cir. 1990) (upholding district court's jurisdiction to consider collateral attack on DEA's selection of administrative forfeiture). Thus, despite CIGNA's invitation, we will not review de novo the merits of the DEA's conclusion that CIGNA was not entitled to return of the jet.

4

II.

The principal issue in this appeal is a pure question of law and depends on statutory interpretation. At issue is whether the DEA must use the procedures for judicial forfeiture, rather than for administrative forfeiture, if the value of the object seized because it was transporting a controlled substance exceeds $500,000. To address the issue, we briefly review the history and operation of the civil forfeiture laws.

A.

The statutory procedures for civil forfeiture applicable to the DEA and other agencies, such as the Immigration and Naturalization Service, the Customs Service, and the Federal Bureau of Investigation, appear at 19 U.S.C.S 1606 et seq. The current provisions reflect the comprehensive revision made to the federal forfeiture statutes in 1984. Before the 1984 amendments, S 1607, which authorizes administrative forfeiture, provided:

> S 1607. Seizure; value $10,000 or less
> If such value of such vessel, vehicle, merchandise, or baggage does not exceed $10,000, the appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. For the purposes of this section and sections 1610 and 1612 of this title merchandise the importation of which is prohibited shall be held not to exceed $10,000 in value.

19 U.S.C. S 1607 (1982). In contrast, S 1610, which authorizes judicial forfeiture, stated:

> S 1610. Seizure, value more than $10,000
> If the value of any vessel, vehicle, merchandise, or baggage so seized is greater than $10,000, the appropriate customs officer shall transmit a report of the case, with the names of available witnesses, to the United States attorney for the district in which the

5

seizure was made for the institution of the proper
proceedings for the condemnation of such property.

19 U.S.C. S 1610 (1982).1

Thus, the statute required an agency seeking forfeiture of
property to use judicial process whenever the value of the
property exceeded $10,000. For property appraised at or
below $10,000, the agency could use administrative
procedures, and these procedures required public notice of
the intended action. A party claiming an interest in
property that was subjected to administrative forfeiture
could opt for a judicial proceeding by notifying the seizing
agency and posting a bond, both within a specified period
from the date of first public notice. 19 U.S.C.S 1608.2

The 1984 amendments reworded these sections,
increased the dollar cutoff, and slightly altered the process.3
While the dual forum approach to forfeiture remained,
Congress added a provision directing that in addition to the
public notice already required, the interested parties be
given personal notice.

The relevant sections of the statute, as amended in 1984,
provided:

S 1607. Seizure; value $100,000 or less, prohibited
merchandise, transporting conveyances
(a) If--

_____

1. The operative text for both of these statutory sections went
essentially
unchanged from their first enactment in 1930 until 1984, except for
increases in the threshold amount, which had started at $1000.

2. Section 1608 operates today essentially as it did in 1930 except for
amendments to the bond amount. Today, that bond value is ten percent
of the property's value or $5000, whichever is less, but not less than
$250. A party losing in a forfeiture proceeding also is liable for the
costs
of the proceeding.

3. Congress enacted comprehensive revisions to the relevant forfeiture
laws twice that session. See Comprehensive Forfeiture Act, Pub. L. No.
98-473, SS 311-319, 98 Stat. 2040, 2053-56 (1984); Trade and Tariff Act,
Pub. L. No. 98-573, S 213, 98 Stat. 2948, 2984-88 (1984). Although the
Comprehensive Forfeiture Act did not have a designated effective date,
the forfeiture provisions in the Trade and Tariff Act became effective on
October 15, 1984. See S 214(e), 98 Stat. at 2989.

6

(1) the value of such seized vessel, vehicle, aircraft, merchandise, or baggage does not exceed $100,000;
(2) such seized merchandise is merchandise the importation of which is prohibited; or
(3) such seized vessel, vehicle, or aircraft was used to import, export, transport, or store any controlled substance;

the appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

1610. Seizure; judicial forfeiture proceedings
If any vessel, vehicle, aircraft, merchandise, or baggage is not subject to section 1607 of this title, the appropriate customs officer shall transmit a report of the case, with the names of available witnesses, to the United States attorney for the district in which the seizure was made for the institution of the proper proceedings for the condemnation of such property.

19 U.S.C. SS 1607, 1610 (1988).

The upper limit on subsection (a)(1) forfeitures was raised to $500,000 in 1990, and a separate monetary instruments category (codified at S 1607(a)(4)) was added.

The 1984 amendments effected a major change in the statute from one that authorized administrative forfeiture only if the property fell below a fixed appraised value to one that also authorized administrative forfeiture of certain categories of properties based on the type of property or the reason for forfeiture regardless of the property's appraised value. In fact, the House Conference Report accompanying the 1990 amendment, which added the monetary instruments category (a)(4), noted that the addition of subsection (a)(4) removes the dollar limit in uncontested cash seizures and also observed that "[t]here is no value

limit on conveyances that contain illegal drugs." H. Conf. Rep. No. 101-650 at 112, reprinted in 1990 U.S.C.C.A.N. 989, 1002. Thus, Congress recognized that S 1607 contained distinctly separate categories of property for administrative forfeiture purposes.

To summarize, the four distinct categories of property subject to administrative forfeiture under the forfeiture statute are: (1) certain property valued at or under $500,000;[4] (2) merchandise that may not be imported; (3) vehicles, aircraft, and vessels used to transport drugs; and (4) monetary instruments. Only the first category, that in S 1607(a)(1), has a dollar threshold. Judicial forfeiture is required if the property does not fall into any of the four categories. S 1610. Significantly, a party may convert an administrative forfeiture to a judicial proceeding by posting a relatively small bond with the agency. S 1608.[5]

B.

In light of this historical background, we turn to CIGNA's contentions. First, CIGNA argues that federal law requires the DEA to use judicial forfeiture proceedings any time the value of the property seized exceeds $500,000, and that because the DEA failed to use judicial forfeiture to seize the jet, it violated CIGNA's constitutional rights.

CIGNA relies on dictum in Marshall Leasing, Inc., 893 F.2d at 1102-03 n.6, which CIGNA reads to suggest that the 1984 amendments increasing the dollar threshold for triggering judicial forfeiture to $100,000 applies to all property. Indeed, notwithstanding that the 1984 revision explicitly distinguished, for purposes of administrative forfeiture, between property seized below a fixed dollar value and certain classes of property subject to administrative forfeiture irrespective of the dollar value (a

_____

4. The threshold amount applies to individual items seized, not to the aggregate value of all items seized. See In re One 1985 Nissan, 889 F.2d 1317, 1322 (4th Cir. 1989).

5. Because CIGNA failed to post the necessary $5000 bond for its $950,000 jet, it was not entitled to judicial forfeiture under 19 U.S.C. S 1608.

8

distinction carried over to the 1990 amendments), many courts have continued to refer to property generally without acknowledging that distinction. See, e.g., Weng v. United States, 137 F.3d 709, 712 (2d Cir. 1998); Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997); Litzenberger v. United States, 89 F.3d 818, 819-20 (Fed. Cir. 1996); United States v. Baird, 63 F.3d 1213, 1217 n.9 (3d Cir. 1995); United States v. Giraldo, 45 F.3d 509, 510 (1st Cir. 1995); Linarez v. United States Dept. of Justice, 2 F.3d 208, 209 (7th Cir. 1993); Schrob, 948 F.2d at 1412 n.9. We note that these statements, however, are mere dicta. Several cases have recognized the statutory distinctions. See Arango v. United States Department of the Treasury, 115 F.3d 922, 925 & n.4 (11th Cir. 1997) (grouping all property together in text while specifying in footnote different categories of seizure); United States v. Idowu, 74 F.3d 387, 394 & n.10 (2d Cir. 1996) (enumerating four categories of property administratively forfeitable after notice).

We rely on the plain language of the statute to hold that S 1607 creates four distinct classes of property subject to administrative forfeiture. With the statute so understood, it is apparent that CIGNA cannot prevail on its argument that SS 1607 and 1610 required the DEA to use judicial forfeiture to forfeit the airplane at issue. The DEA found 300 kgs of cocaine on the seized jet, which was being used to transport the drugs. The property therefore falls under S 1607(a)(3) as an aircraft transporting drugs, and is not subject to the $500,000 threshold. Thus, the DEA did not abuse its discretion in using administrative forfeiture.

As an alternative argument, CIGNA asserts that the DEA's own regulations require the use of judicial proceedings. See 21 CFR S 1316.71 et seq. A review of those regulations shows that they track substantially the forfeiture statute. They define "property" generally to mean "a controlled substance, raw material, product, container, equipment, money or other asset, vessel, vehicle, or aircraft within the scope of the Act." S 1316.71(c). The "property" to be forfeited must be appraised, see S 1316.74; 19 U.S.C. S 1606 (requiring appraisal of vessels, vehicles, aircraft, merchandise, or baggage); and if the property's "appraised value does not exceed the [statutory] monetary amount . . .;

9

is [a] monetary instrument . . .; or . . .[is] a conveyance used to . . . transport or store any controlled substance," then the DEA must publish a public notice, S 1316.75, which is a prerequisite for administrative forfeiture under 19 U.S.C. S 1607.

CIGNA focuses on the language of S 1316.78, stating that if the appraised value exceeds "the jurisdictional limits in 1316.75(a)," the DEA must use judicial forfeiture, and the language of S 1316.77, stating that the DEA may pursue administrative forfeiture for property that "does not exceed the jurisdictional limits in S 1316.75(a)." It argues that the phrase "jurisdictional limits in S 1316.75(a)" applies to all categories of property set forth in the regulation's definitional section.6 It is apparent, however, that by pursuing administrative forfeiture of the jet, the DEA interprets the regulation to incorporate the statutory distinctions in S 1607, so that the "jurisdictional limits" phrase of S 1316.77 and .78 refers only to property for which S 1607 of the statute imposes a dollar threshold. This is consistent with the congressional intent that property used in transporting controlled substances be subject to administrative forfeiture.

CIGNA suggests no reason why the DEA, the agency in the forefront of drug interdiction, would do any less than Congress. Moreover, the DEA was aware that under the statute all that is required to invoke judicial forfeiture proceedings is the posting of a bond. We are obliged to defer to the DEA's interpretative application of these regulations when, as here, it is neither plainly erroneous nor inconsistent with the regulation. See Shell Oil Co. v. Babbitt, 125 F.3d 172, 175-76 (3d Cir. 1997).

In conclusion, we hold that the DEA was not obligated under the federal forfeiture statutes or regulations to pursue judicial forfeiture merely because the value of the property seized pursuant to S 1607(a)(3) exceeded $500,000.

_____

6. This interpretation is articulated in CIGNA's reply brief, which the DEA has not had an opportunity to answer.

10

III.

CIGNA raises several constitutional arguments against the forfeiture of the jet. First, it claims that the forfeiture is violative of the Eighth Amendment's prohibition on excessive fines. See United States v. Austin, 509 U.S. 602 (1993). In United States v. Bajakajian, 118 S. Ct. 2028 (1998), the Supreme Court analyzed whether a criminal forfeiture of $357,144 sought by the government was grossly disproportionate to the crime and, therefore, punitive and excessive. It stated that although a court should defer to the decision of the legislature regarding the appropriateness of the forfeiture, id. at 2037, the statute is not conclusive. Because Bajakajian's offense involved only a willful failure to report the export of currency in amounts at or over $10,000, see 18 U.S.C. S 982(a)(1), and was not associated with any other related crimes, such as tax evasion, drug trafficking, or money laundering, see Bajakajian, 118 S.Ct. at 2036, 2038, the Court rejected as excessive the government's demand for the entire amount.

Even before the Bajakajian opinion, this court was moving toward a proportionality test for forfeiture cases, both civil and criminal. See, e.g., United States v. Sarbello, 985 F.2d 716 (3d Cir. 1993) (discussing criminal RICO forfeiture). In United States v. Premises Known as RR #1, 14 F.3d 864 (3d Cir. 1994), there was a question whether the property at issue was in fact used "to facilitate" violation of the drug laws, a prerequisite for civil forfeiture. Id. at 876. We stated that if that nexus were proven, then the trier of fact would be required to look at the overall circumstances, including seriousness of the offense and personal benefit or culpability, to decide excessiveness. Id. at 875 (citing Sarbello, 985 F.2d at 724).

We conclude that the forfeiture here was not excessive. The federal statute clearly authorized the forfeiture of aircraft used in the transportation of drugs. The amount of cocaine to be transported in the jet was comparatively large for a drug case. Indeed, an offense involving 150 kgs or more of cocaine has been placed in the highest base offense level under the Sentencing Guidelines. See U.S.S.G. S 2D1.1(c). Furthermore, the DEA found CIGNA culpable because it failed to assure that the jet was not used for

11

improper purposes. CIGNA has not contended that it had no duty to take reasonable precautions to prevent Yskamp's use of the airplane for illegal cargo. The DEA noted that CIGNA's insurance policy reimbursed a claimant even though the property seized was used in illegal drug trafficking, which effectively insulated criminals from the loss consequences of their crimes. Consequently, the forfeiture of the jet does not violate the constitutional ban on excessive fines.

CIGNA's other constitutional arguments are equally meritless. On its Fifth Amendment claims, there is no question that CIGNA's counsel was aware of the forfeiture proceedings and could have acted to preserve the company's rights to a judicial forfeiture by submission of a $5,000 bond, but he failed to do so in a timely manner. CIGNA has not pursued an argument that it must receive personal notice, as opposed to the notices counsel received on behalf of Yskamp and Haldan. CIGNA's reliance on United States v. James Daniel Good Real Property, 510 U.S. 43 (1993), for the proposition that it deserves a hearing is misplaced. That case required notice and a hearing before the government may seize real property, not personal property. We decline to extend Good's reach in this case.

CIGNA has not challenged the use of administrative forfeitures generally, only the use of administrative forfeiture instead of judicial forfeiture in this case. Because we have concluded that the DEA's administrative forfeiture was permissible here, and authorized by statute, we need not address CIGNA's Sixth and Seventh Amendment arguments.

Finally, CIGNA raises, apparently for the first time, an argument that the jet was not subject to forfeiture because it served as a common carrier under 21 U.S.C. S 881(a)(4). However, even that exception requires that the owner neither consent nor be willfully blind to the property's use in transporting drugs. Id. Even were we to disregard our precedent and consider this claim in the first instance, see, e.g., Southwestern Pa. Growth Alliance v. Browner, 121 F.3d 106, 111-13 (3d Cir. 1997) (declining review of issue not considered by agency in the first instance), which we are not inclined to do, the DEA found that CIGNA failed to

12

prevent the jet's use in transporting illegal drugs, which would render that exception inapplicable. CIGNA offers no explanation that would overcome this finding.

IV.

In conclusion, we will deny CIGNA's Petition for Review.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

13